### MICHAEL COMERS v. WASHBURN-CROSBY COMPANY.[1]

December 11, 1903.

Nos. 13,704—(182).

**Vice Principal.**

 *Held*, in a personal injury action, that the question as to whether either or both of two foremen employed by the defendant to superintend the loading of flour were vice principals at the time of the accident was for the jury.

Action in the district court for Hennepin county to recover $5,000 for personal injuries. The case was tried before Simpson, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*John H. Steele* and *A. F. Sweetser,* for appellant.

*Koon, Whelan & Bennett,* for respondent.

[1]Reported in 97 N. W. 733.

COLLINS, J.

Defendant, a corporation, is a manufacturer of flour at Minneapolis. In front of one of its mills are two parallel railway tracks; and cars in which flour is to be loaded are switched upon these tracks and "spotted" by placing the doors of the car on the nearest track directly opposite one of the doors of the mill, while the doors of another car, upon the track beyond, are placed directly opposite the doors of the first car, so that, by putting down skids, sacks of flour can be trucked from the mill directly into the first car, and from there directly into the second. The skids used are of sheet steel, about five feet long, and perhaps two-and-a-half feet wide. On each of the trucks two sacks of flour are placed, and the men wheel the trucks over the first skid into the first car, and from there over another skid into the second, if necessary. The floors of the cars vary in height from six to ten inches, so that it frequently occurs that one end of a skid is higher than the other, and this permits it to slip when the end is struck by the wheels of a loaded truck unless the skid is made stationary by cleats. Plaintiff was a car loader, his duty being to truck flour into cars where it was delivered to men who placed the sacks in position. While going from the first to the second car with two sacks of flour, weighing about four hundred-forty pounds, on his truck, the wheels thereof struck the skid connecting the two cars, one end of which was elevated six or seven inches above the other; and the immediate result was that it slipped into the second car, one end tipped down between the cars, and the truck, with its load of flour, fell, so that plaintiff's leg was caught between the truck and the first car. He received serious injuries, and brought this action to recover damages. At the conclusion of the testimony the court below directed a verdict for defendant, and this appeal is from an order overruling plaintiff's motion for a new trial.

The skid which slipped and fell was not cleated so as to prevent its moving, and the negligence relied upon by plaintiff is in defendant's admitted failure to cleat by nailing a piece of wood on the floor of the car, so that the skid could not slip when struck by the wheels of a loaded truck. It is contended by plaintiff's counsel that defendant was negligent when it omitted to cleat this skid, because it had

assumed the duty of so doing, and that by custom, at least, it had become the duty of either the first foreman, Burke, or of the second foreman, Needham, to direct that cleats be nailed upon the floors of the cars whenever it was necessary, in order to prevent the skids from slipping. It is the contention of counsel for defendant that it was conclusively established upon the trial that it was no part of the duty, assumed or otherwise, of the foreman, to see that this work was done, but that in fact it was the custom to have it done by any one of the gang of men who might first reach the car, and have occasion to place the skids for use.

If there was evidence tending to show that defendant had taken upon itself the duty of cleating the skids, and had assumed to exercise control over the cleating, by directing, through its foremen, when it should be done, then the foremen became vice principals, and represented the master in the work of cleating. And if they failed to follow the custom or to perform their duty, by seeing that cleating was done when necessary for the protection of the men, the master would be responsible for their negligence. If the practice' of seeing that skids were properly cleated when necessary had been adopted by the foremen, so that it had become the custom, all men engaged in trucking flour into the cars would have the right to assume that this work had been properly performed. The case, under such circumstances, would be analogous to Sims v. American Steel Barge Co., 56 Minn. 68, 57 N. W. 322, and Abel v. Butler-Ryan Co., 66 Minn. 16, 68 N. W. 205, because it would be for the jury to determine whether or not either of the foremen was a vice principal at the time of the accident, and not a question for the court to pass upon. If, upon the other hand, this work of cleating the skids was performed by the men indiscriminately as they prepared the cars for loading, and was not done under the supervision or orders of either of these foremen, the injury to plaintiff was the result of negligence on the part of a fellow servant; and for such negligence, it is well settled, the defendant cannot be held responsible.

Now, upon examination of the record, we are of the opinion that there was testimony upon the part of the plaintiff which would justify a jury in finding that the foremen, Burke and Needham, either under special direction of defendant, or by assuming that it was their duty

so to do, had taken it upon themselves to see that the skids were properly fastened, and that it had been their custom to direct that this be done, and to see that it was done before trucking commenced. The plaintiff so testified; stating that one of the foremen directed when cleating should be done, and also that the men would not do it of their own motion. The witness Wood also testified to the same effect. Needham, one of the foremen, admitted upon cross-examination that he usually told some of the men in the gang to cleat the skids, and that this work was generally done under his direction. He testified that it was his business to see that the cleating was done by the men. It is true, as claimed by counsel for the defendant, that the testimony of all of the witnesses upon this point was very much weakened by cross-examination; but we do not regard that their positive evidence as to the usual custom of the foremen was wholly destroyed, or that the proofs as to what was usually done were conclusively in favor of the contention of defendant's counsel, to the effect that there was no issue to be submitted to the jury on this point.

On the question we have discussed, a case was made for the jury.

The order of the court below is reversed, and a new trial granted.